IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SUSAN KILLOUGH,

    Plaintiff,

v.

SUNDROP SOLAR, LLC
GREENSKY, LLC
THE BRAND BANKING COMPANY, INC.

    Defendants.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1. Sundrop Solar entered into a contract with Susan Killough to provide her with installed solar panels, at a cost of $28,035. Sundrop Solar arranged for the financing through GreenSky, which she later learned was acting as an agent for The Brand Banking Company. Sundrop Solar stole $28,035 and never performed.

2. GreenSky and The Brand Banking Company enabled Sundrop Solar to draw those funds without a signed financing agreement and without Ms. Killough's authorization that work had been completed.

3. The Brand Banking Company did not provide Ms. Killough with the required Truth in Lending Act disclosures, in connection with the extension of credit.

4. Furthermore, The Brand Banking Company's form retail installment credit agreement does not properly disclose that it takes a security interest in the solar panels, in violation of the federal Truth in Lending Act.

5. Plaintiff brings claims for violations of the New Mexico Unfair Practices Act, NMSA § 57-12-1 *et.seq.*, the federal Truth in Lending Act ("TILA") 15 U.S.C. § 1601 *et seq.*,

and for conversion, tortious breach of contract, and fraud.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under the Truth in Lending Act, 15 U.S.C. §1640(e) and 28 U.S.C. §§ 1331 and 1337. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

7. Venue in this District is proper because the events complained of took place in this District.

## PARTIES

8. Plaintiff Susan Killough ("Ms. Killough") is an individual residing in Albuquerque, New Mexico. She is a "consumer" as defined by the TILA, 15 U.S.C. §1602(h), and Regulation Z, 12 C.F.R. §226.2(a)(11).

9. Sundrop Solar, LLC ("Sundrop") is a foreign limited liability company, located in Arizona, that is registered to do business in New Mexico. It maintains an office in Albuquerque. Its principal business is the sale and installation of solar panels.

10. Defendant GreenSky, LLC ("GreenSky") is a foreign limited liability company, located in Georgia. GreenSky is not registered to do business in New Mexico. It acts as a servicer on consumer contracts for home improvements, as an agent of third party financial institutions.

11. Defendant The Brand Banking Company, Inc. ("BrandBank") is a foreign corporation located in Georgia. BrandBank provides personal and business banking services, including consumer loans for home improvements. It is the 355th largest bank in the

nation and the 8th largest bank in Georgia.  BrandBank is not registered to do business in New Mexico. BrandBank is a "creditor" as defined in the TILA, 15 U.S.C. §1602(f), and Regulation Z, 12 C.F.R §226.2(a)(17).

## FACTS

### Ms. Killough Purchases Solar Panels

12. On or about June 27, 2016, Sundrop came to Ms. Killough's home in Albuquerque, New Mexico, to discuss the purchase and installation of solar panels.

13. This meeting was not arranged pursuant to prior negotiations at Sundrop's business; nor was it necessary to meet an emergency or to repair Ms. Killough's property.

14. Sundrop represented to Ms. Killough that it would install 22 Kyocera solar panels on her home, within about 120 days from June 27, 2016, and seal air ducts, at a cost of $28,035.

15. Sundrop told Ms. Killough that she would receive an $8,410.50 federal tax credit for the solar panels for the 2016 tax year.

16. Sundrop represented to Ms. Killough that it could obtain the financing for her through GreenSky.

17. Sundrop represented to Ms. Killough that she would not have to make any payments on the GreenSky loan for 12 months.

18. Sundrop represented to Ms. Killough that Sundrop would be paid 50% of the agreed upon price at the time of contract, with the remaining 50% paid upon completion of the installation.

19. Based on Sundrop's representations, Ms. Killough signed a purchase agreement with Sundrop Solar, along with other documents, on that day.

20. Sundrop did not give Ms. Killough copies of all the documents she signed on June 27, 2016. Sundrop only gave Ms. Killough copies of her purchase agreement, a welcome letter, a document with handwritten notes, a "what happens next?" document, and an energy systems analysis.

21. Sundrop told Ms. Killough that it would provide her later with copies of everything she had signed.

22. This transaction was a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z, 12 C.F.R. § 226.2.

23. Ms. Killough did not see, sign or review any retail installment credit agreement with Brand Bank or any other lender. She did not receive any TILA disclosures for financing the purchase, in violation of 15 U.S.C. §1638(b).

24. Shortly after signing all the documents, Ms. Killough contacted Sundrop's Albuquerque office and asked that it provide her with all the documents.

25. Sundrop provided her with an illegible GreenSky document called a "Borrower Payment Certificate." Ms. Killough asked Sundrop to provide a legible copy, but it has refused to do so.

26. Sundrop had Ms. Killough sign the original "Borrower Payment Certificate" on June 27, 2016, in a place on the document that certifies that all work had been completed, when clearly Sundrop had not even started work on that date.

27. Sundrop still did not provide Ms. Killough with any GreenSky loan application or Retail Installment Credit Agreement.

## Sundrop Steals $28,035 and Fails to Perform

28. On July 3, 2016, Sundrop requested and received a disbursement of $14,087.47 pertaining to Ms. Killough's contract.

29. In July and August, 2016, Sundrop had the site plan drawn up, and it facilitated Ms. Killough's application to PNM for interconnection.

30. On or about August 17, 2016, Sundrop sent a company called Super Sure Seal out to Ms. Killough's house to blow an Aeroseal product into the air ducts.

31. On September 2, 2016, Ms. Killough sent an email to Sundrop inquiring about the installation date. Ms. Killough also told Sundrop that she was going to try to refinance her home, and she might be able to pay cash for the second half of the contract price.

32. On or about September 13, 2016, Sundrop requested and received a disbursement of $14,017.50, being the second half of money pertaining to Ms. Killough's contract.

33. Ms. Killough did not authorize GreenSky or BrandBank to release this amount to Sundrop. She knew nothing about it until receiving her GreenSky statement in late September, 2016.

34. As soon as Ms. Killough received her GreenSky statement and realized that Sundrop had drawn the second half of the loan, she called GreenSky to ask why all the money had been disbursed on her loan, when Sundrop had not installed the solar panels.

35. GreenSky admitted that Sundrop had taken the rest of the money, but it claimed it did not know why.

36. GreenSky told Ms. Killough that the only thing it could do was put a "hold" on her account. Ms. Killough said that would not help her, since the full amount of the loan was already gone. GreenSky agreed.

37. Sundrop continued to refuse to give Ms. Killough an installation date.

38. On or about October 11, 2016, Ms. Killough sent an email to Sundrop, canceling the contract.

39. On or about October 18, Ms. Killough received a telephone message from Super Sure Seal, stating it was going to put a lien on her house for the Aeroseal, because Sundrop had not paid Super Sure Seal.

40. Ms. Killough immediately contacted Sundrop to complain. On October 20, she called Sundrop and demanded to speak to the General Manager, Mike Bulatovich.

41. Sundrop told Ms. Killough that it would install the solar panels no later than November 4, 2016, and that it would pay Super Sure Seal.

42. On October 24, Super Sure Seal sent an email to Ms. Killough stating that Sundrop still had not paid and asking how Ms. Killough was going to pay it.

43. Ms. Killough wrote to Super Sure Seal and said that she would pay the amount and pleaded with Super Sure Seal not to file a lien on her home.

44. Ms. Killough contacted Mike Bulatovich at Sundrop again, forwarding Super Sure Seal's email.

45. On October 25, Sundrop responded via email that it had paid Super Sure Seal.

46. On October 31, Ms. Killough sent an email to Mike Bulatovich at Sundrop, reminding him of the November 4 promised install date.  Ms. Killough received no response.

47. On November 2, Super Sure Seal confirmed that Sundrop's check had cleared.  Until that time, Ms. Killough lived in fear that a lien would be placed on her home.

48. On or about November 3, Ms. Killough filed a complaint with the New Mexico Attorney General's office, because she had no indication that Sundrop was going to install on November 4.

49. Ms. Killough asked the agency to obtain cancellation of the contract.

50. The Attorney General's office told Ms. Killough that after it had contacted Sundrop, the company agreed it would contact her about an installation date.

51. Ms. Killough never heard from Sundrop.  Ms. Killough was in contact numerous times with Sundrop from November, 2016 through February, 2017, trying to get it to install her solar panels.

52. On February 18, Sundrop sent an email promising to install by no later than March 17 which – surprise – it failed to do.  To date, Sundrop has failed to install any solar panels on Ms. Killough's home.

53. Ms. Killough has made numerous requests for Sundrop either to do the work, or return her money.  Sundrop continues to refuse to perform the work or return her money.

**Green Sky and BrandBank Fail to Address the Fraud that They Enabled**

54. In late September, 2016, when Ms. Killough contacted GreenSky about Sundrop taking the second half of the loan without her knowledge or authorization, Ms. Killough asked GreenSky how she could monitor her account. GreenSky told her how to set up online access.

55. Ms. Killough then registered as a customer on GreenSky's website. For the first time, she saw a form Retail Installment Credit Agreement with BrandBank, containing incomplete TILA disclosures for a loan for her Sundrop Solar purchase.

56. That agreement does not contain Ms. Killough's signature.

57. Ms. Killough also saw for the first time a GreenSky letter congratulating her on her account.

58. This letter contained a copy of a "Shopping Pass," and stated: "you have zero liability for transactions that you do not authorize . . . You will have no obligation under the loan unless you authorize a transaction."

59. In February, 2017, Ms. Killough complained again to GreenSky about Sundrop failing to install the solar panels.

60. GreenSky gave Ms. Killough a complaint form (affidavit) to complete.

61. Ms. Killough filled out the affidavit, had it notarized, and returned it with additional supporting documentation to GreenSky, via email, on March 24, 2017, after Sundrop Solar had missed the March 17, 2017 promised install date.

62. GreenSky has failed to conduct an investigation of her dispute and refuses to help her, other than to provide her an apparently meaningless "provisional credit."

63. BrandBank has never addressed the problem in any noticeable fashion.

64. BrandBank's actions, in failing to provide Ms. Killough with written disclosures of the financing terms, prior to the extension of credit, violates the TILA, 16 U.S.C. 1638(b)(1).

65. The form Retail Installment Credit Agreement fails to disclose the security interest in the solar panels in the "TILA box," conspicuously segregated from all other terms, data or information. Instead, the security interest is buried in tiny print in paragraph 24, on page 3 of the contract, in violation of the TILA, 16 U.S.C. §§1638(a)(9) and 1638(b)(1).

66. The Retail Installment Credit Agreement also states that any holder (BrandBank) of this consumer credit contract is subject to all claims and defenses which the debtor (Ms. Killough) could assert against the seller of goods (Sundrop), up to the amounts paid by the debtor under the contract.

67. Defendants' actions are part of a pattern and practice of deceit, making an award of punitive damages appropriate.

68. Defendants' actions were willful, wanton, malicious or reckless, making an award of punitive damages appropriate.

69. As a result of Defendants' actions, Ms. Killough has suffered actual damages, including, but not limited to, loss of money, damage to her credit rating, loss of time, and aggravation, frustration and inconvenience.

### First Claim for Relief: New Mexico Unfair Practices Act

70. The foregoing transactions occurred in the regular course of Defendants' trade or commerce, and its actions are subject to the New Mexico Unfair Practices Act ("UPA").

71. The foregoing actions of Defendants constitute unfair or deceptive trade practices, within the meaning of the UPA, NMSA 1978 §57-12-2D.

72. The foregoing actions of Defendants also constitute a door-to-door sale within the meaning of the UPA, NMSA 1978 §57-12-21.

73. Defendants failed to furnish Ms. Killough duplicate copies of a separate, easily detachable Notice of Cancellation, which tolls the expiration of her right to cancel, which she now has exercised.  However, Defendants refuse to acknowledge that legal right, which itself is an unfair trade practice.  See *Jaramillo v. Gonzales*, 132 N.M. 459; 2002 NMCA 72; 50 P.3d 554 (Ct. App. 2002), cert. denied, 47 P.3d 447.

74. Defendants willfully engaged in these unlawful trade practices.

### Second Claim for Relief: Fraud by Sundrop

75. Sundrop induced Ms. Killough to purchase the solar panels by misrepresentation of material facts and by omission of material facts, including but not limited to:

    a. Misrepresenting that Sundrop would install the solar panels within 120 days;

    b. Misrepresenting that Sundrop would not take the second half of the loan until the installation of the panels was completed;

    c. Misrepresenting to the lenders its right to draw the second half of the loan;

    d. Misrepresenting the availability of a 2016 tax credit;

      e.      Misrepresenting its intention to install solar panels numerous times.

76. Sundrop knew such representations to be false, or it made those representations recklessly, or Sundrop had no reasonable grounds for believing those representations were true. Sundrop also knew that its omissions were material and important.

77. Sundrop intended to deceive Ms. Killough and intended that she would rely upon its representations, which she did, to her detriment, suffering damages thereby.

### Third Claim for Relief: Violations of the TILA By Brandbank

78. Defendant BrandBank's acts and omissions in connection with the contract for the loan violate the Truth in Lending Act and Regulation Z.

79. Defendant is liable for statutory damages in an amount of $2,000.00, plus actual damages, costs and reasonable attorney fees.

### Fourth Claim for Relief: Tortious Breach of Contract by Sundrop

80. Sundrop had a contract with Ms. Killough to sell and install solar panels.

81. Sundrop breached this contract.

82. Sundrop's actions were malicious, willful, reckless, wanton, fraudulent, in bad faith and in wanton disregard of Ms. Killough's legal rights.

83. Ms. Killough is entitled to recover actual and punitive damages.

### Fifth Claim for Relief: Conversion by Sundrop

84. Sundrop unlawfully exercised dominion and control over Ms. Killough's property in defiance of her rights; and/or

85. Sundrop's actions constituted an unauthorized and injurious use of Ms. Killough's property; and/or

86. Sundrop's wrongfully detained Ms. Killough's property after her demand that it be returned.

87. Ms. Killough is entited to recover actual and punitive damages against Sundrop.

### Sixth Claim for Relief: Conspiracy

88. Sundrop induced Ms. Killough to purchase and to pay for solar panels by its fraud and omission of material facts.

89. Agreements existed between Sundrop, GreenSky and BrandBank that allowed these wrongful acts to be carried out.

90. As a result, Plaintiff suffered damages, including loss of her money.

### Jury Demand

91. Ms. Killough hereby demands trial by six-person jury on all issues so triable.

WHEREFORE, Plaintiff prays that this Honorable Court:

    A.    Declare that the entire contract has been cancelled and is null and void.

    B.    Award actual or statutory damages, whichever is greater, trebled, for violations of the UPA;

    C.    Award actual damages and punitive damages for fraud;

    D.    Award statutory and actual damages for violations of the TILA;

    E.    Award actual and punitive damages for tortious breach of contract;

    F.    Award actual and punitive damages for conversion;

G.      Award reasonable attorney fees and costs; and

H.      Grant such other relief as it deems just and proper.


Respectfully submitted,

/s/ *Susan Warren*
SUSAN WARREN
Feferman, Warren & Mattison, Attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 West
Albuquerque, NM 87102
(505) 243-7773 phone